## DOLCORT v
## EQUITABLE ASSURANCE SOCIETY

Ohio Appeals, 8th Dist, Cuyahoga Co

No 15462. Decided July 22, 1936

Edward E. Lurie, Cleveland, for plaintiff appellant.

Squire, Sanders & Dempsey, Cleveland, A. E. Powell, Cleveland, and J. A. Duncan, Cleveland, for defendant appellee.

BARNES, PJ, HORNBECK and BODEY, JJ, (2nd Dist) sitting.

## OPINION

By HORNBECK, J.

The plaintiff instituted his action for money against the defendant and upon issues drawn the cause came on to trial to a jury.

Among the jurors on the panel there appeared the name of George Heydorn. Charles Heydorn, brother of George Heydorn, answered the summons directed to his brother, represented himself to be George Heydorn, qualified and was accepted, sworn and served as a regular juror in the cause. The jury rendered its verdict for the defendant. Nine members of the jury signed the verdict. The juror Charles Heydorn did not concur with the majority. Thereafter Charles Heydorn served as a juror in at least two other cases in Common Pleas Court. The misrepresentation in the instant cause was discovered and the plaintiff moved for a new trial on the grounds of misconduct of the juror and irregularities in the proceedings of the jury, whereby plaintiff was prevented from having a fair and impartial trial by a jury, as guaranteed by the Constitution and laws of the State.

The question presented has been completely and exhaustively briefed by counsel for the parties and all the cases on the subject in Ohio and many elsewhere have been carefully analyzed. It will serve no useful purpose to prolong this opinion by consideration and discussion of the cases in which, under varied facts, the courts have considered the effect on a motion for new trial of the sitting in a cause of a juror who was irregularly chosen.

The motion of plaintiff for new trial in this case is grounded upon the statute, §11576 GC, which, insofar as pertinent to our question, provides:

"A former verdict * * * shall be vacated and a new trial granted by the trial court on the application of a party aggrieved, for any of the following causes affecting materially his substantial rights: 1. Irregularity in the proceedings of the court, jury, * * *;
2. Misconduct of the jury * * *.
3.-8. * * *."

A trial court shall grant a new trial if and when either of the above quoted causes or any of those set forth in the section are within the sound discretion of the court found to exist. No cause is sufficient to warrant the granting of a new trial unless, as provided at the beginning of the section, it affects materially the substantial rights of the party aggrieved. This is the pole star to which all courts must look in determining whether or not an aggrieved party is entitled to a new trial. Has he, in any of his substantial rights, been pre-

judiced by reason of the membership of the jury which passes upon his cause or by the conduct of the jury or any member thereof?

The Constitution of Ohio provides, on the subject of jury, Article I, Paragraph 5:

"The right of trial by jury shall be inviolate, except that, in civil cases laws may be passed to authorize the returning of a verdict by the concurrence of not less than three-fourths of the jury."

It is obvious that no right guaranteed by the Constitution was invaded by the acts of the jury in the instant cause. The statutory provisions as to the selection of prospective jurors were observed and there was no irregularity in selecting the panel. There, then, was no ground for challenge to the array as provided in §11419-50 GC. There is, however, some analogy to be drawn from the provisions of this section to the situation presented in the instant cause. The section provides, among other things:

"But no challenge to the array shall be made or the whole array set aside by the court, by reason of the misnomer of a juror or jurors; but on challenge, a juror or jurors may be set aside by reason of a misnomer in his or their names; but such challenge shall only be made before the jury is impaneled and sworn, and no indictment shall be quashed or verdict set aside for any such irregularity or misnomer if the jurors who formed the same possessed the requisite qualifications to act as jurors."

Here is found the legislative attitude respecting the effect of irregularities in selecting prospective jurors. The situation presented in the instant case would not come under any provision of the quoted section, but a prospective juror who had answered under a misnomer could, as could the juror in the instant case, be discharged upon objection to the irregularity if timely made, but if such objection was not made, it is too late to object to the juror after verdict.

As early as State v Barlow, 70 Oh St 363, our Supreme Court held "that the manner of selecting and drawing jurors concerns the public rather than the parties."

It has long been recognized that the jury to which a party is entitled is one made up of jurors who have the qualifications of a citizen and jury commissioners are limited in selection to citizens whom they believe to be judicious and discreet persons.

In this case the juror, so far as the record discloses, had all the requisite qualifications to permit his selection as a juror. He served and in his capacity as juror did not act unfavorably to the plaintiff and, in effect supported the claim of the plaintiff. There is nothing to indicate that had another juror served in the place of Charles Heydorn it would or could have changed the result of the verdict. Thus is presented the determinative feature of this case, namely, that despite the irregularity in the selection of the juror the cause of the plaintiff was not prejudiced.

We are cited to the case of McGill v State, 34 Oh St 228, wherein the court held in the first syllabus:

"Where in a capital case, a person not summoned as a juror personates one who was returned on the venire, sits at the trial and joins in a verdict of guilty, the verdict will be set aside and a new trial granted, it appearing that neither the accused nor his counsel was guilty of laches."

There are several qualifications in this proposition to which distinction could be drawn respecting the facts in the instant case, but the outstanding difference is that in the cited case the juror joined in a verdict of guilty and thus took his stand against the party aggrieved. The defendant was on trial for murder in the first degree. The statute required that a special panel should be drawn, from which the jury would be selected to try the case and a copy of this panel was required to be served upon the accused, at least three days before the date of trial. The name of the juror who served and voted for the conviction of the defendant was not upon the copy of the panel served upon the defendant. Cantwell v State, 18 Oh St 477 is cited by the court in support of its conclusion that the irregularity was such as to materially affect a substantial right of the accused but the cited case merely holds that the failure to observe the statutory requirement that in the trial of felonies the jury shall not be permitted to separate after being sworn until discharged by the court was a mandatory provision.

There is no showing nor claim of fraud incident to the selection and service of the juror, nothing to indicate that his presence on the jury adversely affected the substantial interests of the plaintiff in the slightest degree.

No ground for new trial under the stat-

ute appearing, the judgment will be af-
firmed.

BARNES, PJ, and BODEY, J, concur.